UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Center Capital Corp., a Connecticut
Corporation,

    Plaintiff,

v.                                                          Honorable Sean F. Cox

Marlin Air, Inc., a Michigan corporation,      Case No. 07-15128
Stuart W. Dingman, an individual, and
Virginia Dingman, an individual,

    Defendants.
_____/

**OPINION**

        This matter arises out of an aircraft loan agreement from Plaintiff Center Capital Corp. to Defendant Marlin Air, Inc., that was guaranteed by Defendants Virginia Dingman and Stuart Dingman. The matter is currently before the Court on Plaintiff's Motion for Summary Judgment. The parties briefed the issues and the Court heard oral argument on April 3, 2008. The main issue in the motion is whether Plaintiff can obtain a money judgment against Defendants while simultaneously foreclosing its lien on the aircraft. The motion shall be granted because the Court concludes, for the reasons below, that Plaintiff is permitted to exercise those remedies simultaneously.

BACKGROUND

        Plaintiff Center Capital Corp. ("Center Capital" or "Plaintiff") filed this action against Defendants Marlin Air, Inc. ("Marlin Air"), Stuart W. Dingman, and Virginia Dingman ("the Dingmans")(collectively, "Defendants") on December 3, 2007, based on diversity jurisdiction.

1

Center Capital's complaint alleges the following four claims: "Money Damages for Breach of Contract Against Marlin" (Count I); "Breach of Guaranty Against S. Dingman" (Count II); "Breach of Guaranty Against V. Dingman" (Count III); and "Claim and Delivery" (Count IV). Defendants have not asserted any counterclaims in this action.

On December 5, 2007, Center Capital filed a "Verified Motion for Possession Pending Final Judgment," in which it sought possession of the aircraft pending final judgment. Following a status conference with the Court, the parties stipulated to an order granting that motion and giving Plaintiff possession of the aircraft. (Docket Entry No. 11).

On January 28, 2008, Plaintiff filed the instant Motion for Summary Judgment, which has been fully briefed by the parties.

This Court's practice guidelines for motions for summary judgment provide, in pertinent part, that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. The Statement shall include all necessary material facts that, if undisputed, would result in summary judgment for the movant.
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

In compliance with this Court's practice guidelines, the parties submitted statements of undisputed material facts in connection with Plaintiff's motion. As to the facts underlying Plaintiff's substantive claims, there is little dispute among the parties.

2

It is undisputed that Center Capital and Marlin Air entered into a an "Aviation Master Loan and Security Agreement No. 39603", dated September 18, 2003. (*See* Statements of Undisputed Material Facts, at ¶ A). The Aviation Master Loan and Security Agreement No. 39603 is attached as Exhibit A to Pl.'s Statement of Undisputed Material Facts ("SUMF"). It is also undisputed that those parties also agreed to Loan Schedule No. 2 thereto dated February 3, 2005 and Financial Terms Exhibit to Loan Schedule No. 2, attached as Exhibits B & C. (*Id.*).

Center Capital and Marlin Air also entered into two Amendments and Restatements of Loan / Lease Agreement, which are attached as Exhibits D & E to Plaintiff's Statement of Undisputed Facts. (SUMF at ¶ B).

The Dingman's each executed a Continuing Guaranty of the prompt payment of all indebtedness under the Aircraft Loan. (SUMF at ¶ C; *see* Exs. F and G to Pl.'s SUMF).

Loan Schedule No. 2 describes the aircraft and equipment. (*Id.* at ¶ E; Ex. J to Pl.'s SUMF). It is undisputed that Marlin Air took delivery of the of the aircraft. (SUMF at ¶ D; *see* Delivery and Acceptance Receipt, attached as Ex. H to Pl.'s SUMF).

Defendants admit that they agreed to timely make all payments due under the loan. (SUMF at ¶ F). They also admit that their failure to pay an installment under the loan constitutes default. (SUMF at ¶ G). Defendants admit that Marlin Air failed to make payments under the loan agreement and admit that the Dingmans have not paid the full sum as outlined in their Continuing Guarantees. (SUMF at ¶¶ I & J). Defendants further admit that:

- The accrued value of the missed payments from August 17, 2007, through October 17, 2007, is $44,127.89. (SUMF at ¶ K(1)).

- Under the Aircraft Loan in the event of default, Center Capital has the right to accelerate all payments due under the Aircraft Loan and demand Marlin Air pay same. As of the acceleration date of November 5, 2007, the remaining principal balance due for all

3

> payments subsequent to November 5, 2007, is $1,552,722.40, for a total of $1,596,850.29. (SUMF at ¶ K(2)).

- As of the acceleration date November 5, 2007, late fees due and owing are $2,735.08 (SUMF at ¶ K(3)).

- The Aircraft Loan provides that Marlin Air is liable to Center Capital for all costs, expenses, and fees Center Capital incurs in enforcing its rights under the loan. Those costs include repair costs to one of the aircraft's engines in the amount of $200,966.46. In addition, approximately $2,500.00 was expended on an inspection of the aircraft in January 2008. The total costs, expenses and fees of Capital Center in connection with the repair work and inspection are $203,466.46. (SUMF at ¶ K(4)).

- The Aircraft Loan also provides that the default rate of interest is 18%. From November 5, 2007, until the date of judgment, the default rate of interest is $787.50 per day. (SUMF at ¶ K(5)).

While Defendants acknowledge that the Aircraft Loan provides that Center Capital is entitled to recover attorney fees and costs, Defendants contend that the amount of attorney fees sought in Plaintiff's motion are unreasonable and inaccurate. (SUMF at ¶ K(6)). Defendants identified the following as an issue in dispute: "[w]hether or not Plaintiff's prayer for attorney fees is appropriate where Plaintiffs billed for local counsel and national counsel in multiple situations and where Plaintiffs do [not] itemize local counsel's charges." (SUMF at 2)

In support of its request for attorney fees, Plaintiff submits affidavits from Erika Butler-Akinyemi and Kenneth D. Peters. The affidavit from Butler-Akinyemi states that:

> CENTER CAPITAL has expended $6,618.46 in attorney fees and costs through the work of Jatte, Raitt, Heuer & Weiss, P.C. to date in this matter, and requests leave to file an amended fee petition, taking into account additional expenses incurred. Current charges are based upon our hourly billing records, created contemporaneously with the rendering of legal services.

(Butler-Akinyemi Affidavit at ¶ 4). Her affidavit also states that additional attorney fees and costs were incurred through co-counsel, Dressler & Peters, LLC. (*Id*). She did not attach an itemized statement of the charges, but rather, submitted a two-page summary of the charges.

4

The affidavit from Peters states that:

> CENTER CAPITAL has expended in excess of $15,385.60 in attorney fees and costs through the work of Dressler & Peters, LLC to date in this matter, and requests leave to file an amended fee petition, taking into account additional expenses incurred. Current charges are based upon our hourly billing records, created contemporaneously with the rendering of legal services. My hourly rate is $225 per hour. Attorney fees in November 2007 are $2,722.50; attorney fees in December 2007 are $6,735.00; attorney fees in January 2008 exceed $5,017.50; costs (excluding local counsel fees and costs) are $910.60 (A copy of a detailed breakdown of fees and costs incurred to date is available.)(The attorney fee amount in December includes $30 for paralegal time.) In addition, CENTER CAPITAL has incurred attorney fees and costs through local counsel Jaffe, Raitt, Heuer & Weiss.

(Peters Affidavit at ¶ 4).

## ANALYSIS

A.  <u>Can Plaintiff Be Awarded A Money Judgment Against Defendants While Simultaneously Repossessing The Aircraft?</u>

Plaintiff's position is rather simple. It contends that the facts in this case are undisputed and, as a matter of law, it is entitled to the relief requested in its complaint. It contends that it is entitled to summary judgment on its breach of contract claim, entitling it to a money judgment against all Defendants, since the Dingmans personally guaranteed the contract. At the same time, Plaintiff contends that it is also entitled to foreclose its lien on the aircraft so that it can sell the aircraft to satisfy the judgment.

With respect to its breach of contract claim, Plaintiff seeks a money judgment through the date judgment is entered. Plaintiff also seeks attorney fees and expenses of approximately $22,000.00.

In responding to the motion, Defendants do not dispute that Marlin Air breached the contract or that the Dingmans are personally liable. Similarly, Defendants do not dispute the

5

amount owed under the contract. Defendants take the position, however, that any judgment as to either liability or damages is "premature." Defendants contend that Plaintiff's attempt to repossess the plane, which was appraised at approximately $1,900,000.00 in August, 2007, and also get a money judgment against Defendants for approximately $1,800,000.00, would be "double dipping."

In making this argument, Defendants first assert that "pursuant to the terms of the contract, no liability exists until the airplane is sold and a deficiency has been established." To support that argument, the only contract language that Defendants cite is a portion of Paragraph 7 of the main agreement, subsection (vi). When read in full, however, Paragraph 7 simply does not limit Plaintiff's remedies upon default. It provides, in pertinent part:

> 7. RIGHTS AND REMEDIES. If one or more Events of Default shall occur . . . then Lender **shall have such rights and remedies in respect of the Collateral or any part thereof as are provided to secured parties by the Uniform Commercial Code ('UCC') as in effect in any jurisdiction where any collateral may be found, and such other rights and remedies in respect thereof which it may have at law or in equity or under this Agreement**, **including, but not limited to**, the right to:
> (I) apply any security deposit then available to any amount then outstanding with or without notice to Borrower.
> (ii) enter any location(s) where the Collateral is located and take possession of it without demand or notice and without prior judicial hearing or legal proceedings, which Borrower hereby expressly waives.
> (iii) sell all or any portion of the Collateral in the possession of Lender at the time of, or which may be surrendered to or recovered by Lender following an Event of Default, at any broker's board or at public or private sale, with ten (10) days' prior written notice to Borrower, at such time or times and in such manner and upon such terms, whether for case or on credit, as Lender, in its sole judgment, reasonably exercised, may determine.
> (iv) require Borrower, at its own expense, to assemble the Collateral pursuant to subsection 4(m) above and deliver it immediately, free and clear of all liens, encumbrances and rights of others, to a location specified by Lender.
> (v) require Borrower to pay all expenses of any sale, taking, keeping and storage of the Collateral, and all costs, including without limitation, all actual attorneys' fees incurred by Lender in its enforcement of the provisions of this Agreement,

> and
> (vi) apply the proceeds of such sale to all expenses and costs of repossession, storage, insurance, refurbishment and disposition of the Collateral, and any balance of such proceeds toward the payment of the Obligations in such order and manner of application as Lender may, from time to time, elect (and borrower shall be liable to Lender for any deficiency).
> . . . .
>
> **No remedy referred to in this Section is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lender at law or in equity. The exercise or beginning of exercise or beginning of exercise by Lender of any one or more of such remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other remedies** and all remedies hereunder shall survive termination of this Agreement and/or the Schedule.

(Ex. A to Pl.'s Br. at ¶ 7)(emphasis added).

Defendants next contend that, under Michigan law, the common law doctrine of election of remedies bars Plaintiff from seeking a money judgment for 1.9 million dollars since it has obtained possession of the collateral and is currently attempting to sell the airplane. Defendants cite a few older Michigan cases dealing with the doctrine – none of which involve facts similar to those in this case -- for the proposition that a plaintiff cannot recover more than once for the same issue. Defendants contend that the doctrine of election of remedies has three essential elements: 1) the existence of two or more remedies; 2) the inconsistency between such remedies; and 3) a choice of one of them. *Riverview Cooperative, Inc. v. First Nat'l Bank & Trust Co.*, 417 Mich. 307 (1983). Defendants contend the second prong is met because "it is inconsistent to simultaneously seek a $1,900,000.00 money judgment while attempting to sell a piece of Collateral that could earn more than the indebtedness." (Defs.' Br. at 11). Defendants cite no authority, however, to support that assertion.

In its reply, Plaintiff asserts that this case is ripe for summary judgment as to liability and

damages. It contends that the Contract, the Uniform Commercial Code, and the prevailing case law permit it to simultaneously obtain a money judgment and foreclose its lien. It relies on M.C.L. § 440.9601, and its official comments, and on the express language of the Contract in Paragraph 7, to support its position that it can exercise remedies simultaneously and cumulatively.

Plaintiff further acknowledges that, under the UCC, Plaintiff must proceed in a commercially reasonable manner. M.C.L. § 440.9625. Thus, it contends that Marlin Air is protected and would have recourse against Plaintiff in the event that Plaintiff did not comply with the dictates of Article 9 of the UCC.

After consideration of the competing arguments, the Court finds that Defendants' position is not supported by the caselaw or the contract subsection upon which it relies. Rather, the Court finds Plaintiff's position, that it can simultaneously obtain a money judgment and foreclose its lien, to be supported by the express terms of the contract, the applicable caselaw, and the UCC.

As Plaintiff notes, M.C.L. § 440.9601 provides that after default a secured creditor "[m]ay reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure." M.C.L. § 440.9601(1). Moreover, the statute provides that the "rights under subsections (1) and (2) are cumulative and may be exercised simultaneously." M.C.L. § 440.9601(3). In addition, the official comment clarifies that point:

> 5. Cumulative Remedies. Former Section 9-501(1) provided that the secured party's remedies were cumulative, but it did not explicitly provide whether the remedies could be exercised simultaneously. Subsection (c) permits the simultaneous exercise of remedies if the secured party acts in good faith.

Comment No. 5 to Uniform Commercial Code § 440.9601. Michigan courts have confirmed that the "intent of the Code is to broaden the options open to a creditor after default rather than to limit them under the old theory of election of remedies." *Michigan Nat. Bank v. Marston*, 29 Mich.App. 99 (1971); *see also* 9A Mich. Pl. & Pr. § 68.3 *Availability of Remedy*.

"This does not mean, however, that the [creditor] owes no duties to defendant[s] with respect to the collateral." *Id*. at 108. The *Marston* court explained:

> It would be unfair to allow a creditor to deprive the debtor of the possession and use of the collateral for an unreasonable length of time and not apply the asset of the proceeds from its sale toward liquidation of the debt. Moreover, it would be equally unfair to allow a creditor to take possession at all, it the creditor never intended to dispose of the security. For during the period that the debtor is deprived of possession he may have been able to make profitable use of the asset or may have gone to far greater lengths than the creditor to sell. Once a creditor has possession he must act in a commercially reasonable manner toward sale, lease, proposed retention where permissible, or other disposition . . . To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery [under the UCC].

*Id*.

Thus, as Center Capital acknowledges in its Reply Brief, if Center Capital fails to proceed in a commercially reasonable manner with respect to its plan to sell the aircraft and apply the proceeds to the judgment, Marlin Air could file an action against Center Capital.

B.  <u>Is Plaintiff Entitled To The Amount Of Attorney Fees Requested</u>?

Defendants do not dispute that under the contract Plaintiff can recover its attorney fees. Defendants contend, however, that the amount of fees requested is "unreasonable and inaccurate." (Defs.' SUMF at 2). Defendants contend that Plaintiff's requested attorney fees are unreasonable for the work performed in this action.

The Court concludes, however, that Plaintiff has established that the attorney fees and

9

costs incurred were reasonable and that it is entitled to those fees and costs under the contract. Plaintiff's national counsel, who performed most of the work on the case, submitted detailed billing records. The Court has reviewed those records and concludes that the fees requested are reasonable considering the nature of the case, the appearances by counsel, and the motions that were filed in this action. Accordingly, the Court concludes that Plaintiff is entitled to the requested attorney fees.[1]

## CONCLUSION

For the reasons set forth above, Plaintiff's motion shall be granted.

S/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: April 7, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 7, 2008, by electronic and/or ordinary mail.

S/Jennifer Hernandez<br>
Case Manager

---

[1] The Court notes that Defendants initially took the position that they could not make a determination as to whether the approximately $6,000 in fees sought for work performed by Plaintiff's local counsel were reasonable because a detailed billing statement was not provided. Following oral argument on April 3, 2008, however, the parties met and conferred with respect to those fees and agreed that Plaintiff was entitled to the attorney fees requested.